Let's move on to our next case, United States v. Cary. Mr. Mohabit. Good morning. Good morning to the government, and may it please the court. My name is Amir Mohabit. I'm the appointed attorney for the appellant in this matter, Jeremy Cary. I want to try to get something out of the way. Mr. Cary will be the first one to admit that he has made some terrible decisions during his adult life. Some of those decisions include sexual intercourse with a minor, drug use, alcohol abuse, violating various terms of supervised release, and he is sorry for all of that. But none of that is up on this appeal as an issue. You can explain this to me, and I think I probably know why. But he had eight violations, all of which you can revoke his probation and impose a sentence. Why the one? What good is that going to do? Suppose we agree with you even. Well, Your Honor, we don't know what weight the district court gave the violation number seven. Well, that's the reason. You want to send it back and tell the district court, if we rule it in your favor, don't consider this. Correct, Your Honor. Mr. Cary, when he brought this appeal pro se. But it just strikes me as very odd. We've got eight violations. The guy is going to get a sentence out of it, so you're just concerned about the length. He received a sentence of 14 months incarceration with three years supervised release. And Mr. Cary is hopeful that upon remand the sentence will be different. All right. Thank you. So as Your Honor was suggesting, we're really talking about here a special supervised release, special condition number seven. There is just no evidence that Mr. Cary contacted a female minor. The evidence we have, which comes largely from his own testimony, is that he intended and he thought he was texting an adult female, Crystal, his girlfriend. Crystal starts with the letter K. There is no evidence that he knew he was in fact sending out a message to RK, K being the second initial of this particular minor. The government's brief makes much about the number 1999, as in the year 1999, which may have been part of an email address that belonged to RK. Well, 1999 being part of an email address is not determinative of when somebody was born. It's not a birth certificate. It's an email address. And it was uncontradicted that when this individual RK was interviewed, she said she did not receive the message, hey, how you doing? She did not communicate with Mr. Cary. She does not know Mr. Cary. She had no contact with Mr. Cary. That was the unrebutted testimony and evidence at the district court, yet the district court found he made contact with RK. I made an analogy in my brief, and I think it's worth repeating. What happened is tantamount to Mr. Cary standing many, many miles away from this RK, inadvertently whispering into the air in front of his face, hey, how you doing? And RK, being many miles away, never saw Mr. Cary, never heard Mr. Cary's voice, never touched Mr. Cary. And somehow that's considered to be contact. It's not. My concern is that the district court lumped various other bad actions Mr. Cary has admitted to and decided to throw in the kitchen sink, for lack of a better term, by finding everything was violated and sentenced accordingly. There is an exception to Supervisor Release No. 7 concerning unintentional or incidental contact with the minor, even if there was contact. And this would certainly qualify if there was contact. Mr. Cary testified, unrebutted, that this message was sent to RK because Mr. Cary's finger was a millimeter or two off on the app when he tried to text out the adult Crystal, his girlfriend. That's the only explanation that was offered. And Mr. Cary, in good faith, hypothesized that explanation to demonstrate he was not culpable for violating No. 7. Well, right, but the court wasn't required to accept that explanation. You're right, Your Honor. The court did not accept that explanation. We find that's part of the mistake that was made here by the district court. I see I've entered my red light time. Okay. Thank you, Mr. Mojave. Thank you. Mr. Boehm. Thank you, Your Honor. May it please the court, counsel, Jason Boehm on behalf of the United States. Judge Keating, one of the additional complicating facts of the way the case is now is Mr. Cary served the 14 months already that Judge McDade imposed. He's now into the supervised release period. So if this case were to go back, it would hinge on would Judge McDade give him less time on supervised release now than he did the first time? And we think Judge McDade's statements at the time he imposed this, the answer to that is unequivocally no. So he served all the time. The 14 months have been served and Mr. Cary is now, I don't think it makes it. The only thing we could affect would be the supervised release. The term of supervised release. And I don't think there's any chance given this record that Judge McDade would impose less time on supervised release on Mr. Cary. He didn't mention this incident as part of the justification for the sentence, and we don't believe there's any basis. I'd like to answer any questions that the court would have. If there are none, the government will stand on this brief. Okay, thank you, Mr. Boehm. Mr. Mohamed, do you have anything further? I have nothing further, but I'd be happy to answer any questions that the court may have. That's it? I guess not. Thank you. Okay, thank you very much.